# EXHIBIT A

**Civil Action Cover Sheet - Case Initiation**        **(05/27/16) CCL 0520**

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

FILED
1/17/2020 5:14 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L000785

ANDREW STEWART

8134995

v.

PERL MORTGAGE 1/1/14 DEFERRED COMP PLAN and PERL MORTGAGE

No.    2020L000785

FILED DATE: 1/17/2020 5:14 PM    2020L000785

## CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand ☐ Yes ☐ No

**(FILE STAMP)**

### PERSONAL INJURY/WRONGFUL DEATH

CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
  (including Structural Work Act, Road Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES

CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

By:   Chase M. Hundman, Howard & Howard Attorneys PLLC

     (Attorney)            (Pro Se)

### COMMERCIAL LITIGATION

CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☒ 074 Statutory Action
  (Please specify below.**)
- ☐ 075 Other Commercial Litigation
  (Please specify below.**)
- ☐ 076 Retaliatory Discharge

### OTHER ACTIONS

CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

**   Action Under ERISA

Primary Email:   chundman@howardandhoward.com

Secondary Email:   rsmeltzer@howardandhoward.com

Tertiary Email:

**Pro Se Only:**   ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address:

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
1/17/2020 5:14 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L000785

8134995

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – LAW DIVISION

ANDREW STEWART,                          )
                                         )
      Plaintiff,                       )
                                         )
v.                                       )
                                         )        No.  2020L000785
THE PERL MORTGAGE, INC.                  )
JANUARY 1, 2014 DEFERRED                 )
COMPENSATION PLAN, and PERL              )
MORTGAGE, INC., as Plan Administrator,   )
                                         )
      Defendants.                      )

FILED DATE: 1/17/2020 5:14 PM   2020L000785

### COMPLAINT

Plaintiff ANDREW STEWART ("Stewart"), by his undersigned counsel and for his Complaint against Defendants THE PERL MORTGAGE, INC. JANUARY 1, 2014, DEFERRED COMPENSATION PLAN (the "Plan") and PERL MORTGAGE, INC. ("Perl") (collectively, the "Defendants"), states:

### PARTIES

1.    Stewart is and was at all relevant times hereto an individual residing in Cook County, Illinois and both a Participant and Beneficiary under the Plan.

2.    The Plan is an employee benefit plan covered by ERISA.

3.    Perl is an Illinois corporation with its principal place of business located in Cook County, Illinois. Perl is a non-bank lender specializing in residential home mortgage financial solutions and, on information and belief, the administrator of the Plan at issue here.

### JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this matter pursuant to 29 U.S.C. §1132(e)(1). Pursuant to Section 2-209 of the Illinois Code of Civil Procedure, this Court has

FILED DATE: 1/17/2020 5:14 PM    2020L000785

personal jurisdiction over the Defendants as: (a) Perl is an Illinois corporation principally headquartered and conducting business in Cook County, Illinois; (b) the performance of the Plan is connected with Illinois—given that Stewart is a resident of Illinois.

5.      Pursuant to Section 2-101 of the Illinois Code of Civil Procedure, venue is proper as Perl resides in this County and a substantial part of the events or omissions giving rise to the claim occurred here.

## GENERAL ALLEGATIONS

6.      Prior to his termination on or about January 10, 2019, Perl employed Stewart as its Chief Operations Officer ("COO") and selected Stewart to participate in a special benefit plan implemented by Perl.

7.      The Plan provides a maximum benefit of $500,000.00, payable at the rate of $50,000 per year beginning on January 1, 2022, assuming Stewart's continued employment between January 1, 2014 and December 31, 2021. A true and correct copy of the letter Perl provided Stewart "highlighting the major benefits of the [P]lan" is attached hereto as Exhibit 1.

8.      On information and belief, Perl is the Plan's Administrator or in fact exercises ultimate responsibility for Plan interpretation and benefit decisions thereunder.   The letter highlighting the Plan's benefits references but does not identify the "Plan Administrator." (Ex. 1, p. 4).  Additionally, the letter explicitly names Perl as the entity who "will provide [Stewart] with a supplemental income benefit in the amount of $50,000 per year, for a 10 year period." (Ex. 1, p. 1)

9.      The Plan further provides, in relevant part, "if [Perl] should terminate [Stewart] for reasons other than cause… prior to December 31, 2021," Perl will pay Stewart a "lump sum benefit

FILED DATE: 1/17/2020 5:14 PM    2020L000785

based on a partial vesting schedule." (*See* Ex. 1, p. 2). The Plan, however, does not define "cause." (*See* Ex. 1, pp. 1-5).

10.     Perl terminated Stewart's employment without cause on January 10, 2019.

11.     The reasons Perl contemporaneously articulated for terminating Stewart on January 10, 2019, were twofold: (1) Perl claimed Stewart recommended the White Eagle Golf Club in Naperville, Illinois (the "Club"), where he is a member, as an office space for Perl's competitor, Homeside Financial, LLC ("Homeside"); and (2) Perl claimed Stewart began working for Homeside from the Club in early January 2019 (of course, this necessarily had to be prior to January 11, 2019).

12.     Neither of those assertions was or is true.

13.     To the extent, if any, Perl now tries to suggest that it terminated Stewart for breach of his fiduciary duties for secretly planning on joining Homeside while employed by Perl, that *post hoc* rationalization is both irrelevant and untrue.

14.     Indeed, at all relevant times Stewart openly divulged and discussed his interest in joining Homeside with Perl's President, Ken Perlmutter ("Perlmutter"), from November 2018 on.

15.     Specifically, Stewart disclosed the following to Perlmutter on or about the dates referenced:

- he did not feel that Perlmutter was committed to him or Perl, and that Stewart would therefore be considering other employment opportunities (November 2018);

- he did not feel that CrossCountry Mortgage, Inc. ("CrossCountry"), a company with which Perl was exploring a sale or relationship, was the best option for him (December 2018);

- most Perl producers did not want to go to CrossCountry (December 2018); and

FILED DATE: 1/17/2020 5:14 PM   2020L000785

- neither he nor other key Perl personnel like David Hendriksen and David Hochberg wanted to go to CrossCountry and that Homeside was a much better fit for them (December 2018).

16.     In fact, in December 2018, Perlmutter authorized Stewart to contact Homeside to discuss a potential partnership with Perl in CrossCountry's stead.

17.     Perlmutter also engaged in direct communications with Homeside about that very possibility (i.e. a potential partnership with Homeside in CrossCountry's stead).

18.     Moreover, when the prospect of a Perl/Homeside transaction was dropped, Perlmutter repeatedly told Stewart and others that he would come over to Homeside with his own personal sales team ($400M) at some point after the closing of the CrossCountry deal.

19.     Notwithstanding Perl's obligations under the Plan and its lack of cause to terminate him, Perl has knowingly and willfully failed to pay Stewart a lump sum benefit upon termination, thereby wrongfully denying him of his benefits under the Plan.

20.     For a termination in year of service 2019, Perl owed Stewart a lump sum benefit of $306,244. (Ex. 1, p. 5).

21.     After Perl terminated him on January 10, 2019, Stewart repeatedly asked Perl's Human Resources officer (as no Plan Administrator was named in the letter attached hereto as Exhibit 1) to provide him with the formal Plan documents or Summary Plan Description.

22.     Additionally, undersigned counsel asked Perl's outside counsel in April and May of 2019 for the Plan documents, the name of the Plan Administrator and the forms, if any, required by the Plan Administrator for Stewart to make a written claim for benefits as suggested by Ex. 1, p. 4.  Perl's outside counsel eventually forwarded the additional Plan documents attached as Exhibit 2.

FILED DATE: 1/17/2020 5:14 PM    2020L000785

## COUNT I
## DENIAL OF BENEFITS UNDER 29 U.S.C. § 1132(a)(1)(B)

23.    Stewart incorporates the allegations set forth in paragraphs 1 through 22 above as if fully set forth herein.

24.    The Plan is an unfunded ERISA top hat plan which exists primarily to provide benefits to a select group of management or highly compensated employees. 29 U.S.C. § 1101(a).

25.    The Plan is subject to ERISA's enforcement provisions. 29 U.S.C. §§ 1131-1145.

26.    Stewart is due benefits under the Plan because of his termination without cause on January 10, 2019. 29 U.S.C. § 1132(a)(1)(B).

27.    Perl has wrongfully denied Stewart the benefits of the Plan.

28.    Stewart has exhausted all of the Plan's administrative procedures and remedies of which he was timely apprised.

29.    Alternatively, exhaustion of the Plan's administrative procedures and/or remedies, if any, would be futile in this case because Perl deprived Stewart of meaningful access to said procedures and/or remedies.  Additionally, Stewart, through his counsel, asked Perl's counsel if there were any such administrative procedures and/or remedies to be pursued.  Perl, however (through its counsel) apprised Stewart (through his counsel) that any administrative procedures and/or remedies need not be pursued because Perl had already brought a separate lawsuit against Stewart and that Perl would not change its benefits decision in any event.

30.    The amount of benefits due Stewart under the terms of the Plan is $306,244 according to the partial vesting schedule under the Plan.

WHEREFORE, Plaintiff, Andrew Stewart, respectfully requests this Court enter an order in his favor and against Defendants for:

a.    statutory damages of $306,244;

FILED DATE: 1/17/2020 5:14 PM   2020L000785

b.      reasonable attorneys' fees, court costs, and expenses, 29 U.S.C. § 1132(g)(1); and

c.      all such other and further relief in Plaintiff's favor as this Court deems just and proper.

## COUNT II
## INTERFERENCE UNDER 29 U.S.C. § 1140

31.     Stewart incorporates the allegations set forth in paragraphs 1 through 22 above as if fully set forth herein.

32.     The Plan is an ERISA plan and Stewart is a participant and beneficiary of it.

33.     Perl selected Stewart as COO to participate in the Plan.

34.     Perl terminated Stewart's employment on or about January 10, 2019 with the pretext of the termination being "for cause," with the specific intent to violate ERISA and interfere with Stewart's rights under the Plan.

35.     Perl terminated Stewart under circumstances that indicate Perl intended to deprive Stewart of benefits. 29 U.S.C. § 1140.

36.     Absent Perl's improper termination of Stewart's employment, Stewart would be entitled to the maximum benefit of $500,000.00 under the Plan.

WHEREFORE, Plaintiff, Andrew Stewart, respectfully requests this Court enter an order in his favor and against Defendants for:

a.      statutory damages of $500,000;

b.      reasonable attorneys' fees and costs, as aforesaid; and

c.      all such other and further relief in Plaintiff's favor as this Court deems just and proper.

FILED DATE: 1/17/2020 5:14 PM    2020L000785

Respectfully submitted,

ANDREW STEWART

By:   /s *Robert H. Smeltzer*
      One of his attorneys

Robert H. Smeltzer
Chase M. Hundman
HOWARD & HOWARD ATTORNEYS PLLC (#46359)
200 South Michigan Ave., Suite 1100
Chicago, Illinois 60604
Tel:    (312) 372-4000
Fax:   (312) 939-5617
*rsmeltzer@howardandhoward.com*
*chundman@howardandhoward.com*

4850-8965-2630, v. 5

7

FILED DATE: 1/17/2020 5:14 PM   2020L000785

FILED
1/17/2020 5:14 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L000785

# Exhibit 1

FILED DATE: 1/17/2020 5:14 PM   2020L000785



**PERL**
YOUR LENDER FOR LIFE

2936 West Belmont Ave. | Chicago, IL 60618 | 773.413.6234 direct | 773.617.8231 cell | 773.413.6134 fax

January 1, 2014

To: Andrew Stewart

Dear Andrew,

Congratulations once again on being selected to participate in a special benefit plan implemented by Perl Mortgage.

## THE PLAN

Perl Mortgage has implemented the Perl Mortgage, Inc. deferred Compensation Plan for a select group of key employees who we feel are instrumental in the future growth of Perl Mortgage. This letter highlights the major benefits of the plan.

## SUPPLEMENTAL INCOME BENEFIT

The plan is designed to reward you for your hard work in helping grow the company over the next eight years. The maximum benefits of the plan are contingent upon your continued employment with Perl Mortgage through this eight year period. Upon completion of employment through December 31, 2021, Perl Mortgage will provide you with a supplemental income benefit in the amount of $50,000 per year, for a 10 year period. **Your total benefit will be $500,000.** (See Exhibit A)

During the payout phase of this retirement plan, should any event occur in which your employment terminates, Perl Mortgage will pay you a lump sum benefit equal to any remaining unpaid benefits subject to a present value (PV) calculation.

FILED DATE: 1/17/2020 5:14 PM    2020L000785

In addition, if the company should terminate you for reasons other than cause, or the company is sold and you elect to stay with the new owner, prior to December 31, 2021, Perl Mortgage will pay you a lump sum benefit based on a partial vesting schedule of the PV calculation for December 31, 2021.

## Death Benefit

The plan includes a very beneficial provision that provides your designated beneficiaries with a lump sum payment for any remaining unpaid benefits under the plan should you die at any time while still employed with the company. This provision is effective immediately and is not subject to a PV calculation. **Your current death benefit equals $500,000.**

Since we are providing this benefit for a very small, select group of employees, we ask that you keep this confidential and not share this with anyone else.

We at Perl Mortgage value your employment with us and your long term commitment to the company.

Sincerely,

Ken Perlmutter

FILED DATE: 1/17/2020 5:14 PM   2020L000785

# EXHIBIT A FOR ANDREW STEWART

| Plan Year | Benefit Due Participant |
|---|---|
| 2014 – 2021 | $0 |
| 2022 | $50,000 |
| 2023 | $50,000 |
| 2024 | $50,000 |
| 2025 | $50,000 |
| 2026 | $50,000 |
| 2027 | $50,000 |
| 2028 | $50,000 |
| 2029 | $50,000 |
| 2030 | $50,000 |
| 2031 | $50,000 |

FILED DATE: 1/17/2020 5:14 PM   2020L000785

# ADDITIONAL INFORMATION

# PERL MORTGAGE, INC. DEFERRED COMPENSATION PLAN

**Claims Procedure.** Any Participant or Beneficiary who is entitled to a payment of a benefit for which provision is made in this Plan shall file a written claim with the Plan Administrator on such forms as shall be furnished to him by the Plan Administrator and shall furnish such evidence of entitlement to benefits as the Plan Administrator may reasonably require. The Plan Administrator shall notify the Participant or Beneficiary in writing as to the amount of benefit to which he is entitled, the duration of such benefit, the time the benefit is to commence and other pertinent information concerning his benefit. If a claim for benefit is denied by the Plan Administrator, in whole or in part, the Plan Administrator shall provide adequate notice in writing to the Participant or Beneficiary whose claim for benefit has been denied within ninety (90) days after receipt of the claim unless special circumstances require an extension of time for processing the claim. If such an extension of time for processing is required, written notice indicating the special circumstances and the date by which a final decision is expected to be rendered shall be furnished to the Participant or Beneficiary. In no event shall the period of extension exceed one hundred eighty (180) days after receipt of the claim. The notice of denial of the claim shall set forth (a) the specific reason or reasons for the denial; (b) specific reference to pertinent Plan provisions on which the denial is based; (c) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (d) a statement that any appeal of the denial must be made by giving to the Plan Administrator, within sixty (60) days after receipt of the notice of the denial, written notice of such appeal, such notice to include a full description of the pertinent issues and basis of the claim. The Participant or Beneficiary (or his duly authorized representative) may review pertinent documents and submit issues and comments in writing to the Plan Administrator. If the Participant or Beneficiary fails to appeal such action to the Plan Administrator in writing within the prescribed period of time, the Plan Administrator's adverse determination shall be final, binding and conclusive.

**Appeal.** If the Plan Administrator receives from a Participant or a Beneficiary, within the prescribed period of time, a notice of an appeal of the denial of a claim for benefit, such notice and all relevant materials shall immediately be submitted to the Employer. The Employer may hold a hearing or otherwise ascertain such facts as it deems necessary and shall render a decision which shall be binding upon both parties. The decision of the Employer shall be made within sixty (60) days after the receipt by the Plan Administrator of the notice of appeal, unless special circumstances require an extension of time for processing, in which case a decision of the Employer shall be rendered as soon as possible but not later than one hundred and twenty (120) days after receipt of the request for review. If such an extension of time is required, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension. The decision of the Employer shall be in writing, shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent Plan provisions on which the decision is based and shall be promptly furnished to the claimant.

FILED DATE: 1/17/2020 5:14 PM   2020L000785

## Perl Mortgage, Inc. deferred Compensation Plan

## PARTIAL VESTING SCHEDULE

### 10 Payments of $50,000*

| Year Service Terminates | Partially Vested Percentage of PV* | Lump Sum Benefit |
|---|---|---|
| 2014 | 30% | $114,842 |
| 2015 | 40% | $153,122 |
| 2016 | 50% | $191,403 |
| 2017 | 60% | $229,683 |
| 2018 | 70% | $267,964 |
| 2019 | 80% | $306,244 |
| 2020 | 90% | $344,525 |
| 2021 | 100% | $382,805 |

*Vesting schedule is based on the PV calculation which assumes 10 annual payments made at the beginning of each period beginning 12/31/2021 using an interest rate factor of 6.50%.

FILED DATE: 1/17/2020 5:14 PM   2020L000785

FILED
1/17/2020 5:14 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L000785

# Exhibit 2

FILED DATE: 1/17/2020 5:14 PM   2020L000785

# PERL MORTGAGE, INC.
## DEFERRED COMPENSATION PLAN

### *RECITALS*

This Deferred Compensation Plan (the "Plan") is adopted by PERL MORTGAGE, INC. (the "Corporation"), for certain Key Employees. The purpose of this Plan is to provide a further means whereby the Corporation may afford financial security to certain Key Employees who have rendered and continue to render valuable service to the Corporation, constituting an important contribution toward its continued growth and success, by providing for the deferral of future compensation so that they may be retained and their productive efforts encouraged. The Plan is intended to be a "top-hat" plan (i.e., an unfunded deferred compensation plan maintained for a select group of management or highly compensated employees) under Sections 201(2), 301(a)(3), and 401(a)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended.

Accordingly, the following plan is adopted this 27th day of January, 2014, effective January 1, 2014.

## I. DEFINITIONS

1.1     Beneficiary means the person(s) designated by a Participant to receive plan benefits in the event of the Participant's death pursuant to Article III.

1.2     Board means the Board of Directors of the Corporation.

1.3     Cause shall mean the occurrence of any one of the following events:

  a. Participant commits any act of fraud or embezzlement against the Corporation;

  b. Participant willfully and intentionally fails to follow the reasonable and lawful instructions of the Corporation with respect to any material portion the services required to be performed by Participant on behalf of the Corporation, which failure results in a material adverse effect on the Corporation or the Corporation's business;

  c. Participant commits any act or makes any public statement with the intent to cause harm to the Corporation, which results in a material adverse effect on the Corporation or the Corporation's business;

  d. The conviction of Participant of a felony or the conviction of Participant for the commission of illegal acts in connection with Participant's employment;

FILED DATE: 1/17/2020 5:14 PM   2020L000785

      e.  Participant engages in willful misconduct with respect to a material portion of the services required to be performed on behalf of the Corporation and which results in a material adverse effect on the Corporation; or

      f.  Participant uses alcohol or drugs in any manner which materially affects the performance of Participant's duties under any applicable agreement, or otherwise on behalf of the Corporation.

1.4    <u>Change in Control</u> means: (A) the transfer of control of the Corporation, whether by sale or merger, such that at least 51% of the Corporation's voting control is held by a Person or Persons who or which is not a Family Member; or (B) the sale of all or substantially all of the Corporation's assets to a Person or Persons who or which is not a Family Member.

1.5    <u>Committee</u> means a group of individuals appointed by the Board of Directors of the Corporation to administer the Plan.

1.6    <u>Corporation</u> means PERL Mortgage, Inc., an Illinois corporation.

1.7    <u>Deferred Compensation</u> means the benefit paid Participant pursuant to Article II.

1.8    <u>Family Member</u> means: (A) Kenneth Perlmutter; (B) a lineal descendant of Kenneth Perlmutter; or (C) an Entity at any time established for the primary benefit of Kenneth Perlmutter and/or any person described in clause (B) of this Section.

1.9    <u>Key Employee</u> means an employee of the Corporation who fits within a select group of management or is a highly compensated employee.

1.10    <u>Participant</u> means a Key Employee who has been selected to participate in this Plan, and who is identified on Exhibit A hereto.

1.11    <u>Plan</u> means the PERL Mortgage, Inc., Deferred Compensation Plan established by this Agreement.

1.12    <u>Plan Year</u> means the twelve (12) month period ending each December 31 during which this Plan is in effect.

1.13    <u>Service</u> means continuous full-time or substantially full-time service with the Corporation as an employee of Perl Mortgage, Inc.

## II. **BENEFITS**

2.1    <u>Calculation of Benefits</u>. The Corporation recognizes that the efforts of the Participant(s) covered by this Plan directly impact upon the profitability, growth and success of the Corporation. To that end, the Corporation shall reward each Participant by paying him a benefit equal to the amount determined in accordance with Exhibit A hereto and Article III

FILED DATE: 1/17/2020 5:14 PM   2020L000785

below, provided that the Participant remains employed by and in Service to the Corporation until the earlier of the following dates, hereinafter referred to as Benefit Events:

      a. Participant's completion of eight (8) years of Service after January 1, 2014;

      b. Participant's death;

      c. Corporation's involuntary termination of Participant prior to 2021 for reasons other than Cause; or

      d. Change in Control of PERL Mortgage, Inc. prior to December 31, 2021.

In the event Participant's employment with Corporation terminates prior to the above Benefit Events, no benefit shall be paid to Participant or Beneficiary.

The form and timing of payment of said Benefit is set forth in Article III hereunder.

### III. FORM AND COMMENCEMENT OF BENEFITS

3.1 <u>Payments</u>. Payments of a Participant's Benefit, the amount of which shall be determined in light of Article II above, shall be paid to the Participant as follows:

      a. <u>Completion of Eight (8) Years of Service</u>. If the Benefit Event is Participant's completion of eight years of Service, Participant shall be paid an annual benefit for ten (10) years as set forth in Schedule A. Said payments shall be in the form of substantially equal monthly installment payments and will be paid on the Corporation's normal pay dates for management employees. Payments shall commence within sixty (60) days of the Benefit Event.

Notwithstanding the preceding paragraph, in the event that the Participant terminates Service after December 31, 2021 but prior to December 31, 2031, for any reason other than death, Participant shall be paid a lump sum equal to the Present Value of the remaining unpaid benefits calculated using a 6.5% discount factor. Said payment shall commence within sixty (60) days following termination of employment.

      b. <u>Death</u>. If the Benefit Event is Participant's death and the Participant dies while still employed, but prior to the completion of all payments set forth in Schedule A, any remaining payments under the Plan shall be made by the Corporation to the Beneficiary or Beneficiaries. Said remaining payments shall be in the form of a lump sum which shall commence within sixty (60) days of Participant's death.

2272202.7.24005.53704

FILED DATE: 1/17/2020 5:14 PM   2020L000785

c. <u>Corporation's involuntary termination of Participant prior to 2021 for reasons other than Cause</u>. If the Benefit Event is Corporation's involuntary termination of Participant prior to 2021 for reasons other than Cause, as defined in section 1.3, in lieu of paying a benefit equal to the total amount set forth in Exhibit A, Corporation shall pay Participant a lump sum benefit calculated as follows: (i) determine the Present Value (PV) of Participant's unpaid benefits using a 6.5% discount factor (PV); (ii) multiply the total number of Participant's completed years of Service to Corporation in accordance with the following schedule:

| If Service Terminates in Year | Participant Vested in Following Percentage |
|---|---|
| 2014 | 30% |
| 2015 | 40% |
| 2016 | 50% |
| 2017 | 60% |
| 2018 | 70% |
| 2019 | 80% |
| 2020 | 90% |
| 2021 | 100% |

(iii) multiply the PV by the percentage arrived at in (ii). The lump sum shall be paid within sixty (60) days of the Benefit Event.

d. <u>Change in Control prior to December 31, 2021</u>. If the Benefit Event is a Change in Control as defined in section 1.4, occurring prior to 2021, Corporation shall pay Participant a lump sum benefit calculated as follows: (i) determine the Present Value (PV) of Participant's unpaid benefits using a 6.5% discount factor (PV); (ii) multiply the total number of Participant's completed years of Service to Corporation as of the date of Change in Control in accordance with the following schedule:

| If Service Terminates in Year | Participant Vested in Following Percentage |
|---|---|
| 2014 | 30% |
| 2015 | 40% |
| 2016 | 50% |
| 2017 | 60% |
| 2018 | 70% |
| 2019 | 80% |
| 2020 | 90% |
| 2021 | 100% |

- 4 -

FILED DATE: 1/17/2020 5:14 PM   2020L000785

(iii) multiply the PV by the percentage arrived at in (ii).  The lump sum shall be paid within sixty (60) days of the Benefit Event.

3.2     Life Insurance.  It is the present intention of the Company to purchase certain life insurance policies on the life of each Participant.  In the event of the liquidation and dissolution of the Company during the term of this Agreement, subject to the claims of creditors of the Company, the Company may distribute the policy on the life of the Participant to the Participant in full satisfaction of its obligations to the Participant.

3.3     Beneficiary Designation.  The Participant may from time to time change the designated Beneficiary or Beneficiaries without the consent of such Beneficiary or Beneficiaries by filing a new designation in writing with the Committee.  The spouse of a married Participant shall join in any designation of a Beneficiary or Beneficiaries other than a spouse.  If no designation shall be in effect at the time when any Benefits payable under this Plan shall become due, the Beneficiary shall be the spouse of the Participant, or if no spouse is then living, the Participant's estate.

## IV.  TAXES

4.1     Withholding; Employment Taxes.  Employee is solely responsible for the income tax liability that arises when the Deferred Compensation is paid.  To the extent required by law in effect at the time payments are made, the Corporation shall withhold any taxes required to be withheld by the federal or any state or local government from payment made hereunder.  Any employment taxes owed by Employee with respect to any Deferred Compensation payable under this Plan may be withheld from other compensation of Employee in the year in which such tax liability accrues.

## V.  CONTRIBUTION

5.1     Contributions Are Not in Trust.  A Participant's or Beneficiary's interest in this Plan is an unsecured claim against the general assets of the Corporation and neither the Participant nor a Beneficiary has any right against the account until the Plan has distributed the benefit.  Until paid to Participant or his Beneficiary, all amounts credited to a Participant, if any, are the general assets of the Corporation, remain subject to forfeiture, and may be disposed of or used by the Corporation in such manner as it determines.

## VI.  CONDITIONS RELATED TO BENEFITS.

6.1     Plan Administration.  The Committee shall administer the Plan and interpret and apply its provisions in accordance with its terms.

6.2     No Right to Corporation Assets.  Neither a Participant nor any other person shall acquire by reason of this Plan any right in or title to any assets, funds or property of the Corporation whatsoever including, without limiting the generality of the foregoing, any specific funds or assets which the Corporation, in its sole discretion, may set aside in anticipation of a liability hereunder, nor in or to any policy or policies of insurance on the life of a Participant owned by the Corporation.

- 5 -

FILED DATE: 1/17/2020 5:14 PM   2020L000785

6.3     No Employment Rights.  Nothing herein shall constitute a contract of continuing service or in any manner obligate the Corporation to continue the services of a Participant or obligate a Participant to continue in the service of the Corporation, and nothing herein shall be construed as fixing or regulating the bonuses or other compensation payable to a Participant.

6.4     Cooperation.  A Participant will cooperate with the Corporation by furnishing any and all information requested by the Corporation, in order to facilitate the payment of benefits hereunder, taking such physical examinations as the Corporation may deem necessary (i.e., in the event of disability and/or the Corporation's purchase of life insurance on a Participant) and taking such other actions as may be requested by the Corporation.   If a Participant refuses to cooperate, the Corporation shall have no further obligation to such Participant under this Plan.

6.5     Offset.  If, at the time payments or installments of payments are to be made hereunder, a Participant or a Beneficiary or both are indebted or obligated to the Corporation, then the payments remaining to be made to such Participant or Beneficiary or both may, at the discretion of the Corporation, be reduced by the amount of such indebtedness or obligation, provided, however, that an election by the Corporation not to reduce any such payment or payments shall not constitute a waiver of its claim for such indebtedness or obligation.

## VII. **AMENDMENT**

7.1     Corporation's Right to Amend.  The Corporation may amend the plan at any time, without the consent of any Participant or Beneficiary; however, no amendment shall be made which accelerates the time or schedule of any payment under this Plan.

## VIII. **MISCELLANEOUS**

8.1     Benefits Not Assignable.  Neither a Participant nor a Beneficiary may assign, transfer or pledge the benefits under this Plan.  Any attempt to assign, transfer or pledge a Participant's benefits under this Plan is void.

8.2     Benefit.  This Plan is binding upon and inures to the Corporation, its successors and assigns and upon a Participant and his/her heirs and legal representatives.

8.3     Governing Law.  This Plan shall be governed by and construed in accordance with the laws of the State of Illinois, except to the extent preempted by the laws of the United States.  Jurisdiction and venue for any claims arising under this Agreement shall lie exclusively in Cook County, Illinois, USA.

8.4     Gender Usage.  The use of the masculine gender includes the feminine gender for all purposes of this Plan.

2272202.7.24005.53704

8.5   Entire Agreement. This Agreement represents the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior understanding whether written or oral.

8.6   Saving Clause. In the event that any provision of this Plan shall be held to be illegal, invalid or unenforceable for any reason, said illegality, invalidity or unenforceability shall not affect the remaining provisions, but shall be fully severable and the Plan shall be construed and enforced as if said illegal, invalid or unenforceable provisions had never been inserted herein.

8.7   Code Section 409A. In the event that any provision of this Plan shall be held to cause the application of the twenty percent (20%) penalty or immediate tax recognition under Section 409A of the Internal Revenue Code of 1986, as amended, the provision that causes either the application of the above-mentioned penalty or immediate tax recognition shall become null and void and this Plan shall be construed and enforced as if the provision causing the negative tax consequences had never been inserted herein.

## IX. CLAIMS PROCEDURE

9.1   Claims Procedure. Any Participant or Beneficiary who is entitled to a payment of a benefit for which provision is made in this Plan shall file a written claim with the Plan Administrator on such forms as shall be furnished to him by the Plan Administrator and shall furnish such evidence of entitlement to benefits as the Plan Administrator may reasonably require. The Plan Administrator shall notify the Participant or Beneficiary in writing as to the amount of benefit to which he is entitled, the duration of such benefit, the time the benefit is to commence and other pertinent information concerning his benefit. If a claim for benefit is denied by the Plan Administrator, in whole or in part, the Plan Administrator shall provide adequate notice in writing to the Participant or Beneficiary whose claim for benefit has been denied within ninety (90) days after receipt of the claim unless special circumstances require an extension of time for processing the claim. If such an extension of time for processing is required, written notice indicating the special circumstances and the date by which a final decision is expected to be rendered shall be furnished to the Participant or Beneficiary. In no event shall the period of extension exceed one hundred eighty (180) days after receipt of the claim. The notice of denial of the claim shall set forth (a) the specific reason or reasons for the denial; (b) specific reference to pertinent Plan provisions on which the denial is based; (c) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (d) a statement that any appeal of the denial must be made by giving to the Plan Administrator, within sixty (60) days after receipt of the notice of the denial, written notice of such appeal, such notice to include a full description of the pertinent issues and basis of the claim. The Participant or Beneficiary (or his duly authorized representative) may review pertinent documents and submit issues and comments in writing to the Plan Administrator. If the Participant or Beneficiary fails to appeal such action to the Plan Administrator in writing within the prescribed period of time, the Plan Administrator's adverse determination shall be final, binding and conclusive.

9.2   Appeal. If the Plan Administrator receives from a Participant or a Beneficiary, within the prescribed period of time, a notice of an appeal of the denial of a claim

2272202_7_24005_53704

FILED DATE: 1/17/2020 5:14 PM   2020L000785

for benefit, such notice and all relevant materials shall immediately be submitted to the Employer. The Employer may hold a hearing or otherwise ascertain such facts as it deems necessary and shall render a decision which shall be binding upon both parties. The decision of the Employer shall be made within sixty (60) days after the receipt by the Plan Administrator of the notice of appeal, unless special circumstances require an extension of time for processing, in which case a decision of the Employer shall be rendered as soon as possible but not later than one hundred and twenty (120) days after receipt of the request for review. If such an extension of time is required, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension. The decision of the Employer shall be in writing, shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent Plan provisions on which the decision is based and shall be promptly furnished to the claimant.

IN WITNESS WHEREOF, the Corporation has adopted this Perl Mortgage, Inc., Deferred Compensation Plan as of 27ᵗʰ day of _____ January _____ , 2014, effective January 1, 2014.

PERL MORTGAGE, INC.,

By: _____

President

- 8 -

2272202.7.24005.53704

FILED DATE: 1/17/2020 5:14 PM   2020L000785

PERL Mortgage, Inc.
2936 W. Belmont Avenue
Chicago, IL  60618

January 27, 2014

Top Hat Plan Exemption
Employee Benefits Security Administration
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N-1513
Washington, D.C.  20210

      Re:    PERL Mortgage, Inc. Deferred Compensation Plan

Ladies and Gentlemen:

Please be advised that PERL Mortgage, Inc. has adopted a non-qualified plan of deferred compensation primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.  There are 4 employees participating in the plan.

This letter is being provided to you pursuant to Department of Labor Regulation Section 2520.104-23(b).  The timely submission serves to avoid the requirement that this Top Hat Plan file an Annual Report (Form 5500).

In this regard, the following information is submitted:

| | | |
|---|---|---|
| 1. | Company Name: | PERL Mortgage, Inc. |
| 2. | Address: | 2936 W. Belmont Avenue<br>Chicago, IL 60618 |
| 3. | FEIN: | 36-3987946 |
| 4. | Number of Plans: | One |

Sincerely,

Ken Perlmutter,
President

2272378.1.03500.94316

FILED DATE: 1/17/2020 5:14 PM    2020L000785

**ACTION BY WRITTEN CONSENT OF THE DIRECTORS**
**OF**
**PERL MORTGAGE, INC.**

The undersigned, being all the directors of PERL Mortgage, Inc. (the "Company"),

hereby consent in writing to the adoption of the following resolutions:

RESOLVED, that the PERL Mortgage, Inc. Deferred Compensation Plan
(the "Plan"), a copy of which is attached hereto, is hereby adopted and approved
effective January 1, 2014 ("Effective Date").

FURTHER RESOLVED, that the proper officer of the Company is hereby
authorized and directed to execute the Plan and to take such actions as may be
necessary or appropriate to implement the Plan

IN WITNESS WHEREOF, the undersigned have set their hands and seals this 27th day

of January , 2014.

Being all of the Directors of
Said Company

2306250.1.24005.53704